UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LOUANNA F. LUNDEEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-04061-SLD |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER

An administrative law judge denied Plaintiff Louanna Lundeen's application for disability insurance benefits and supplemental security income. She appealed that denial to this Court. At issue are Lundeen's Motion for Summary Judgment, ECF No. 9, and the Commissioner's Motion for Summary Affirmance, ECF No. 10. For the reasons set forth below, Lundeen's Motion for Summary Judgment is DENIED, and the Commissioner's Motion for Summary Affirmance is GRANTED.

BACKGROUND

Lundeen filed a claim for Disability Insurance Benefits and Supplemental Security Income on July 31, 2008, alleging disability beginning on February 8, 2008. Her claims were denied initially and upon reconsideration. Administrative Law Judge ("ALJ") David Thompson held a hearing on October 22, 2010. ALJ Thompson found that Lundeen had three severe impairments—hidradenitis suppurativa (a skin disease), diabetes, and obesity—but determined that she has the Residual Functional Capacity ("RFC") to lift ten pounds frequently and twenty pounds occasionally, and stand for at least two hours during an 8-hour work day. ALJ Thompson also found that there were a significant number of jobs in the national economy that

1

Lundeen could perform. On April 23, 2012, the Appeals Council denied Lundeen's request for review, making ALJ Thompson's decision final unless Lundeen filed a civil action in United States District Court. Lundeen has filed a civil action and seeks review of the ALJ's decision. Lundeen's arguments and all relevant medical evidence will be discussed below as needed.

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ Decision

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). To determine whether substantial evidence exists, the court reviews the record as a whole but does not consider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Even if reasonable minds could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th

Cir. 2002) (citations omitted). Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Id.* "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)).

## II. Entitlement to Benefits

In order to be entitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"), a plaintiff must show that her inability to work is medical in nature and that she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the plaintiff:

1) Has not, during the relevant time period performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2, or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 will require the ALJ to make a finding about the plaintiff's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is then used at steps 4 and 5 to determine whether the plaintiff can perform past relevant work or can adjust to other work, respectively. *Id.*

The plaintiff has the burden of production and persuasion at steps 1 through 4. But once the plaintiff shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the plaintiff is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

## DISCUSSION

Lundeen claims that the ALJ erred in several ways: by ignoring evidence of her hidradenitis suppurativa, chronic headaches, abdominal pain, and morbid obesity; and by failing

4

to pose certain hypotheticals to the vocational expert ("VE"). Before discussing whether the ALJ erred, however, the Court addresses Lundeen's compliance with the local rules.

I. **Compliance with Local Rule 8.1(D)**

Local Rule 8.1(D) requires that a plaintiff's motion for summary judgment and memorandum of law "identify the statute, regulation or case law under which the Commissioner allegedly erred." CDIL-LR 8.1(D). Although Lundeen, through her counsel, purports to make this motion "under Local Rule 8.1(D)," she does not to satisfy it. The one-page motion and three-page brief—page counts that reflect generous rounding up—contain no citation to authority to support Lundeen's assertion that the ALJ erred. All they contain are citations to the record evidence and assertions that the ALJ failed to consider particular evidence and pose certain hypotheticals to the VE. Although these alleged errors may provide a basis for granting Lundeen's Motion for Summary Judgment, they were not presented within the legal framework required by Local Rule 8.1(D). Since the Government made no objection to Lundeen's memorandum, however, and was apparently able to infer her legal argument to the extent necessary to respond to it, the Court will not require Lundeen to rebrief her Motion for Summary Judgment.

II. **The ALJ's Assessment of Lundeen's RFC**

RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). When determining a claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe, to the extent that they are supported by the medical evidence. 20 C.F.R. § 404.1545(a)(2). The ALJ must explain his RFC determination through a narrative discussion of the evidence by showing how the evidence supports each of his

conclusions. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). But when the ALJ fails to explain his conclusions, reversal and remand are warranted. *Id.*

The ALJ found that Lundeen has the RFC to "lift up to ten pounds frequently and twenty pounds occasionally," "stand or walk at least two hours in an eight hour workday," and engage in "occasional postural activities," but that she must avoid "concentrated exposure to hazards in excess of those found in a typical residence." R. 18. The ALJ also found that there are a significant number of jobs in the national economy that Lundeen could perform given her RFC. For example, she has the RFC to work as a ticket checker, telephone quote clerk, and order clerk for food and beverages. R. 24. Although Lundeen's brief provides only a skeletal outline of her claims, it is clear that she argues the ALJ erred in two ways. First, Lundeen claims that the ALJ erred by failing to consider certain evidence when assessing her RFC. By making this claim, Lundeen implicitly argues that the ALJ also erred by failing to support his RFC determination by substantial evidence and by improperly assessing her credibility. Second, Lundeen claims that the ALJ posed incomplete hypothetical questions to the VE.

### A. Whether substantial evidence supports the RFC

Lundeen claims that the ALJ failed to consider a litany of evidence when assessing her RFC. By making this argument, Lundeen implicitly asserts that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for many of her limitations. Specifically, she claims that the ALJ ignored evidence regarding her hidradenitis suppurativa, chronic headaches, abdominal pain, and morbid obesity. For the reasons below, the Court concludes that the ALJ carefully reviewed all the evidence when assessing Lundeen's RFC, and his conclusion that she has the RFC to perform certain work is supported by substantial evidence.

6

First, Lundeen contends that the ALJ failed to consider evidence of her hidradenitis suppurativa, a skin disorder. The evidence that Lundeen points to includes a calendar that she used to document the frequency and duration of her skin sores as well as six medical charts showing that she had skin sores or abscesses. Contrary to Lundeen's claim, the ALJ considered the calendar that Lundeen created. During the hearing, Lundeen testified that her calendar shows that she experienced skin sores "once a month, [or] once every two months" and that her sores last between a week and ten days. R. 63–65. The ALJ also questioned Lundeen about her calendar. For example, they discussed when Lundeen filled out the calendar and why she began keeping it in the first place. R. 66–67. Thus, the ALJ considered Lundeen's calendar.

The ALJ's RFC determination is supported by substantial evidence even though he did not specifically cite the medical records that Lundeen points to now. Although the ALJ noted that Lundeen's skin disorder is supported by "objective medical evidence," he concluded that this limitation does not prevent her from performing work. R. 19. As a result of the medical evidence regarding Lundeen's skin disorder, which shows ongoing symptoms, the ALJ restricted the amount of weight that she can lift. R. 22. The ALJ found, however, that the medical evidence does not support the conclusion that her skin disorder limits her to the degree that she is unable to work because, "aside from a January 2008 note from Dr. Geick referring to [a] recent hospitalization for the claimant's skin disorder, the claimant's medical records are devoid of any current or recent examinations, treatment, or medicine prescribed for her skin disorder." R. 21. Thus, the ALJ adequately articulated his conclusion that the medical records do not support the finding that Lundeen's skin disorder prevents her from working.

Second, Lundeen claims that the ALJ ignored evidence regarding her chronic headaches and abdominal pain. Ignoring a single medical record of a particular symptom may not be error

when the rest of the medical evidence shows that the claimant is not being treated for that symptom. *See Scott v. Callahan*, 977 F. Supp. 856, 872 (N.D. Ill. 1997). With respect to chronic headaches, Lundeen only points to one medical record showing that she has this symptom. She does not allege that her medical records show that she is being treated for chronic headaches. Because Lundeen only points to one record discussing her headaches and because the records do not show that she is being treated for this symptom, the ALJ did not err by ignoring this exhibit. In terms of abdominal pain, Lundeen also cites to a single piece of evidence: one hospitalization for "abdominal pains, nausea, vomiting, blood sugar elevated." R. 422, 440–41. However, the ALJ noted that Lundeen testified at the hearing "that she does have stomach pain but that [it] does not affect her ability to function." R. 19, 55. The ALJ did not err by ignoring the minimal evidence of abdominal pain in Lundeen's medical records; he acknowledged that she does have stomach pain. The ALJ was not required, moreover, to limit Lundeen's RFC because of a symptom that she admits does not affect her ability to function.

Third, Lundeen claims that the ALJ failed to consider her morbid obesity. While the ALJ did not use the descriptor "morbid" when discussing Lundeen's obesity, he did consider all the evidence of her obesity when determining her RFC. According to SSR 02-1p, "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) [do not] establish whether obesity is or is not a 'severe' impairment for disability program purposes," so the proper course is the one taken by the ALJ here: "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." The ALJ found that Lundeen's obesity was a severe impairment, which is one of the reasons why he imposed restrictions on the level of work that she can perform. For example, the ALJ restricted her to lifting ten pounds frequently and twenty pounds occasionally, standing for two hours during an

8

eight-hour day, and avoiding "concentrated exposure to hazards in excess of those found in a typical residence." R. 22–23. The ALJ noted, however, that the medical records contained "no treating or examining medical source that has specifically attributed additional or cumulative limitations to the claimant' [sic] obesity." R. 18. The ALJ then concluded that Lundeen can perform work despite her obesity because her medical records were "not consistent with disability." R. 19. Therefore, the Court concludes that the ALJ supported his RFC determination with substantial evidence.

### B. Whether the ALJ properly assessed credibility

The ALJ sufficiently articulated his reasons for determining that aspects of Lundeen's claims were not credible. Pursuant to the Social Security Administration's interpretation policy, a claimant's subjective description of a physical or mental impairment is evaluated under a two-step process. *See* SSR 96-7p. First, the ALJ is required to assess whether there exists an "underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, if such impairment exists, the ALJ must determine the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* If the claimant reports symptoms that are not "substantiated by objective medical evidence," the ALJ must determine the credibility of these statements in light of the entire record. *Id.*

The ALJ must state the "specific reasons" for his credibility determination of the claimant's statements. SSR 96-7p; *see also Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Unsubstantiated statements that the claimant's symptoms have been "considered" will not suffice. SSR 96-7p. The ALJ is obligated to state enough of the rationale underlying his

credibility determination so the claimant and reviewing bodies understand why the credibility determination was reached. *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). The courts will give "special deference" to an ALJ's credibility determination, and an ALJ's determination is subject to reversal only if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The ALJ concluded that Lundeen's claims that her impairments prevented her from working were not credible. Under the first step of the test used to assess a claimant's subjective description of her impairments, the ALJ found that there was enough evidence to conclude that Lundeen's symptoms "can be anticipated to produce a certain amount of pain and limitations." R. 21. But under the second step, the ALJ concluded that her symptoms did not limit her ability to do basic work because they did not have the intensity, persistence, or limiting effects that she claimed.

The ALJ sufficiently explained his determination that Lundeen's claim that her skin disorder prevented her from working was not credible. Although Lundeen stated that she suffers from skin sores every month, the ALJ concluded that she could work despite this impairment because she also "stated [that] she had not been prescribed an antibiotic [to treat her sores] for over six months" and because "[s]he could not remember her last prescription for antibiotics prior to the one sixth months ago." R. 19. In the ALJ's view, Lundeen's claim regarding the intensity of her sores was also not credible. Lundeen testified that when she gets sores, they last approximately a week to 14 days, and that she cannot walk or sit, but she also stated that she is able to perform numerous daily activities, such as bathing, dressing, cooking, shopping, cleaning, and taking care of her young child, including bringing him to and from school. R. 19, 21, 63–64.

Relying on this testimony, the ALJ sufficiently explained why he determined that Lundeen's claim that her skin disorder prevented her from working was not credible.

The ALJ also provided sufficient reasons for concluding that Lundeen's claims regarding her pain were not credible. The ALJ determined that Lundeen's pain claims were not credible because the "medical findings do not demonstrate clearly that she has the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities which are associated with intense and disabling pain." R. 21. In terms of leg and finger pain, the ALJ determined that this claim was not credible because Lundeen is "able to perform numerous daily activities," "able to ambulate effectively without any assistive devices," and was "able to rise and walk out of the hearing room with no problems." R. 21. Thus, the ALJ sufficiently explained why Lundeen's pain claims were not credible.

Finally, the ALJ sufficiently explained why Lundeen's claim of disabling obesity was not credible. Lundeen testified that she could perform daily activities, such as cooking, shopping, cleaning, bathing, and caring for her son, R. 21; while these activities do not prove that Lundeen is not disabled, "they do demonstrate [her] ability to sit, stand, walk, lift light items, [and] concentrate to complete tasks." R. 21. Thus, the ALJ provided enough of a rationale to support his determination that Lundeen's claim that her obesity prevented her from performing work was not credible.

### C. Whether the ALJ posed incomplete hypothetical questions to the VE

Lundeen claims that the ALJ erred by failing to pose certain hypothetical questions to the VE. Specifically, she asserts that the ALJ failed to ask the VE (1) whether there were jobs available in the national economy for someone who would have to leave work for a certain period of time each day because of pain, and (2) whether there were jobs available for someone

who had to be absent from work for a certain number of days each month because of cellulitis. For separate reasons, these two claims fail.

The ALJ did not err by never asking the VE whether there were jobs available for someone who has to leave work for a certain period of time each day due to pain. An ALJ "is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). "A credibility determination by the ALJ will not be disturbed unless it is 'patently wrong.'" *Naudain v. Apfel*, 119 F. Supp. 2d 812, 818 (C.D. Ill. 2000) (quoting *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994)). Here, the ALJ did not present a hypothetical question to the VE regarding Lundeen's pain because he did not find credible the limitation she alleged. Accordingly, the ALJ did not err by never asking the VE whether there were jobs available for persons who must take time off from work each day because of pain.

Lundeen is mistaken about the second deficiency that she asserts the ALJ made when he questioned the VE. Contrary to Lundeen's claim, when the ALJ asked the VE about the availability of jobs, he also asked the VE how many jobs would be available to someone who "is going to miss four or more days of work per month." R. 70.

## CONCLUSION

For the reasons set forth above, Lundeen's Motion for Summary Judgment, ECF No. 9, is DENIED, and the Commissioner's Motion for Summary Affirmance, ECF No. 10, is GRANTED.

Entered this 27th day of March, 2014.

                                                         s/ Sara Darrow
                                                         SARA DARROW
                                        UNITED STATES DISTRICT JUDGE